UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20303-SEITZ

UNITED STATES OF AMERICA,

vs.

KAREL FELIPE,
_____/

**SENTENCING MEMORANDUM**

18 U.S. Code § 3553 directs the court to impose a sentence sufficient—but not greater than necessary—to reflect the nature and circumstances of the offense, and the Defendant's history and characteristics. *See* 18 U.S.C. § 3553(2) (2018). The sentence should reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, to afford adequate deterrent from criminal conduct, and to protect the public from further crimes of the defendant. *See id*. The guidelines are but one of many factors to be considered by the Court when imposing a sentence.

**CIRCUMSTANCES OF THE OFFENSE**

Karel Felipe was convicted at trial for the offenses of Medicare fraud and money laundering. The operative facts were that 6 years ago, in 2017, Mr. Felipe delivered a sealed envelope from Miami to a mailbox in Orlando. He also was described as copying information written by Alberto Gonzalez Delgado upon checks. Despite a thorough detailed financial investigation by the top forensic investigators of the FBI, no witness, law enforcement, or otherwise, identified any check purportedly written by Mr. Felipe. No evidence, other than the statements of the leaders of the conspiracy, was introduced to prove that fact. The conspiracy lasted from October 2016 until May of 2019. Mr. Felipe's mailing of the envelope occurred in

1

July of 2017. Mr. Felipe had a falling out with Gonzalez Delgado shortly thereafter and he left the conspiracy. Didier Arcia, a cooperating co-defendant, who the government vouched for by filing a Rule 35, but who was not called at trial, stated to the government on April 11, 2023, "Felipe was not trustworthy or responsible due to his drug usage", smoked marijuana frequently, and received the drugs from Organizer/leader Alberto Gonzalez Delgado. He added that on occasion Felipe would absent himself from courier tasks and others would have to do the couriering.

The government advanced the argument that Mr. Felipe received a million dollars for his participation in the conspiracy. On this point, Arcia reported to the government that Delgado and Felipe fought due to Gonzalez Delgado controlling Felipe's money. "DELGADO would not give Felipe the total amount of money he was owed." On numerous occasions, he told the government that Gonzalez Delgado was a liar and engaged in constant deceptions.

## KAREL FELIPE'S HISTORY AND CHARACTERISTICS

When Karel Felipe was 12 years old, he was diagnosed with ADHD. The condition was so severe he was sent to "away school". He remained interned at that school for 2 years. Because of this condition, Mr. Felipe was unable to complete high school and has worked as a handyman and/or landscaper for all his adult life. He has three children by a previous marriage and one with his present wife and all were living together at the time of Mr. Felipe's arrest and conviction. In 2014, Mr. Felipe was asked to take custody of the three older children because the children's mother was moving to out of state. Mr. Felipe raised those children. The oldest, Carlos Karel Felipe is a U.S. Marine who lives on base in North Carolina. His second child, Joseph Karel Felipe, 20 years old, has severe autism and is currently enrolled at Southwest Miami Senior High school program for autistic children where he will remain until he is 25 years

old. His third child Shailyn Felipe, 17 years old, is a junior at Southwest Miami Senior High School and a member of the U.S Army ROTC program. Valentina, his fourth child, is 15 months old.

Carlos Karel Felipe:

  

Joseph Karel Felipe:

  

Joseph, Sailyn, Valentina, Karel, Carlos

Shailyn Felipe:

 

Valentina Felipe:






During the trial, the leader of the conspiracy Alberto Gonzalez Delgado stated that he got Mr. Felipe addicted to methamphetamine. During the period between his arrest and conviction Mr. Felipe, with the assistance of the Court and pretrial services, was able to break his addiction to methamphetamines.

The testimony at trial and the contents of the FBI Reports of Interviews ("ROI") produced the following quotes:

On 3/9/21 Alberto Gonzalez Delgado told the government:
- Karel speaks broken English, was not very polished.
- He did not have the people skills necessary to deal with other people.
- Gonzalez Delgado fired Mr. Felipe because he was insubordinate, undependable, loud, and rowdy.
- Gonzalez Delgado used cocaine and meth with Felipe.

On 1/27/21 Eduardo Rubal told the government:
- Karel was heavily addicted to drugs, including crystal meth and cocaine.
- Karel's addiction made him unreliable and difficult for Alberto to utilize.

On 3/24/22 Eduardo Rubal told the government:
- For Felipe, there were many examples of misspellings of the names of corporations.
- Felipe was more of a worker and was used when someone was physically needed to complete a task.

At trial, numerous photographs and testimony depicted Mr. Felipe building outdoor decks and set ups for the numerous parties of Alberto Gonzalez Delgado. It was also established that Mr. Felipe would cut the lawns and maintain the yards of Mr. Gonzalez Delgado's numerous homes and wives.

It should be noted that throughout this very difficult time in Mr. Felipe's life, he was still able to work hard to raise and support his children, one severely autistic requiring special services, and two who became members of our military.

## **COMPARATIVE SENTENCES**

At least 14 members of this conspiracy have already been sentenced by Courts in this jurisdiction. In its Sentencing Memorandum the government suggests that Mr. Felipe's role was like Didier Arcia and Hector Gonzalez who received sentences of 80 months and 48 months respectively. This is not accurate. Mr. Arcia was management while Mr. Felipe was a minor player. Arcia traveled to Michigan to purchase the first company associated with the fraud, performed administrative tasks, collected patient files and other records from the prior home health agencies' and wrote checks. He was involved with the organizers of this conspiracy since at least 2004. (PSR paragraph 48). He worked for Gonzalez Delgado since 2012. He carried on a ruse in 2015 to personally purchase New Wave from its owners in Michigan. He flew to North Carolina to advance the fraud and received 10% of the profits. He was recommended 3 aggravating levels for management.

Hector Suarez Gonzalez was hired to manage a fraud office. He searched for and leased apartments in his own name to be used as headquarters for the conspiracy. He worked as a full member of the conspiracy for 8 months and was responsible for the management of a home health fraud company stationed at the leased apartments/office he obtained.

According to Eduardo Rubal, the co-creator of this conspiracy, "Felipe was more of a worker and was used when someone was physically needed to complete a task". Unlike Arcia, the defense, the government, and U.S. Probation all agree Mr. Felipe was a minor player deserving of a role reduction and a downward departure.

A more coherent comparison can be made to Jeffrey Avila who received a sentence of credit time served. According to the PSR paragraph 52, Avila transported checks issued to the nominee owners and to the shell companies used to facilitate the movement of monies through layered transactions to more senior members of the organization. In addition to acting as a courier for checks and cash, Avila met with co-conspirators to collect and drop off the cash obtained from ATMs and check cashing stores, concealed in different bags. Avila is tech savvy and lent his tech talents to advance the ends of the fraud by obtaining multiple telephones and wireless hotspots to facilitate the operations of the conspiracy. Mr. Felipe could not perform tasks as complicated as those given to Mr. Avila. He was asked to copy names and numbers from papers written out by Gonzalez Delgado unto checks and to travel to Orlando to deliver a sealed envelope into a mailbox. The difference between the respected guidelines determination of these two men shows why a traditional application of the guidelines is unworkable and would produce a severe disparity of sentences. The flashpoint is the calculation of a loss amount. For Mr. Avila who is entrusted with collecting and delivering monies and obtaining the technological support for the conspiracy, loss amount of $100,000 is suggested. For Felipe, the mailing of one envelope and the tracing of unknown number of checks produced a loss amount of $57 million and the suggested sentence of 17 years though they were both couriers and minor players.

The attached chart shows the sentences of most of those already sentenced for this conspiracy and establishes the proper hierarchy of sentences. The court should look to the sentences of 13 members of the conspiracy to properly slot Mr. Felipe.

Eduardo Rubal and Alberto Gonzalez Delgado are both organizer/leaders and received a 4-point enhancement and were sentenced to 210 months each. Didier Arcia was recommended a 4-point enhancement for managerial role – he received a sentence of 80 months. Vicente Gonzalez Acosta and Jesus Trujillo both received a 3-level enhancement for managerial roles and were sentenced to 188 and 168 months respectively. Alexis Gil received a 3-level enhancement for management and a sentence of 65 months. Hector Gonzalez, the manager of the last apartment/home health agency, received a sentence of 78 months reduced to 48. Avila, the courier, money collector/distributor, received a sentence of credit time served.

Under the circumstances, the sentence suggested by the government of 121 months is excessive and wildly out of step with the sentencing structure already established by courts in the Southern District for members of this conspiracy. Mr. Felipe's conduct is like Mr. Avila's and clearly less than Suarez Gonzalez and Arcia. Accordingly, only a sentence less than that received by Suarez Gonzalez and Arcia and in line with Mr. Avila's would avoid a disparity and appropriately punish the behavior of Mr. Felipe as compared to the other defendants sentenced in this case.

This case does not lend itself to accurate loss amounts. The government suggests that the statements of organizer Gonzalez Delgado should be taken at face value regarding the amount of money paid to Mr. Felipe and the extent of his involvement. This position is in direct conflict with their stance at trial where they fought tooth and nail to get an instruction that would allow the jury to find the defendant's guilty even if they did not believe the specific statements made

7

by Gonzalez Delgado.  The government argued that Felipe "deliberately ignored" some of the details that were administered by Gonzalez Delgado behind closed doors.  That instruction now makes it impossible for the Court to determine if the jury made a finding as to whether Felipe received a million dollars or wrote checks. Because of the government's requested instruction, the jury could have easily found that government witnesses were unreliable, but that Mr. Felipe's presence at the apartments and the fact that he was employed by Gonzalez Delgado was sufficient for conviction.

     Mr. Felipe comes to this sentencing with many points in his favor.  He has effectively ceased using the narcotics and has continued to work at honest labor.  His behavior in court during the trial was exemplary and appropriate.  Mr. Felipe, unlike his co-conspirators, is a devoted father who has produced three excellent adult children, two of whom are in the military.

     For these reasons and the reasons spelled out in the defense's objection to the PSR and Moton for Downward Departure, the Court should sentence Mr. Felipe to 24 months in the Bureau of Prisons followed by supervised release.

     I HEREBY CERTIFY that a true and correct copy of the foregoing was provided to the office the U.S. Attorney and all relevant parties hereto via the CM/ECF system this date.

Respectfully submitted,

JUAN DE JESUS GONZALEZ, LAWYER, PA
For Karel Felipe
2460 SW 137 Avenue, Suite 254
Miami, FL 33175
Cell: 786-486-9708
Off: 305-596-4500
Fax: 305-596-4515
JuanGonzalezLaw@aol.com
***Juan de Jesus Gonzalez***

Florida Bar No. 371904

**Eduardo Rubal**: 210 months

Co-Founder and CEO of fraud involving a complicated structure and numerous co-conspirators and nominee owners.

4-point enhancement as organizer
October 2016 – May 2019

**Alberto Gonzalez-Delgado**: 210 months

Co-Founder and CEO of fraud
2 separate convictions for fraud
7 wives
Distributes methamphetamine to employees to harm.

4-point enhancement as organizer
October 2016 – May 2019

**Vicente Gonzalez Acosta**: 188 months

Co-Founder of fraud

October 2016 – May 2019

**Jesus Trujillo**: 168 months

Supervisor, created shell companies, owned one of the fraudulent businesses and supervised Gil and the nominee owners.

3 level enhancement
for management role

October 2016 – May 2019

**Didier Arcia**: 80 months

4 level aggravating role recommended

2016 - 2017

**Alexey Gil**: 65 months

3 level enhancement
for management role

**Hector Suarez Gonzalez**: 78 months (reduced to 48)

Acquired the locations for the fraud, signs leases in own name, and assists in the operation of the fraud.

2 level minor role applied.

September 2019 – May 1029

**Alexander Fernandez**
120 months

**Yaxing Tapanes**
97 months

**Jose Carlos Valladares Rivera**
97 months

**Antonio Jimenez**
48 months

**Jeffrey Avlia**

Transported checks to co-conspirators and shell companies.
Collect and distribution of cash from ATM and check cashing stores.
Obtained telephones, wireless hotspots, and other technology to assist co-conspirators in avoiding detection.

2 level mitigation applied.

**Tamara Quicuitis**

Homeless Secretary.
Earned $500/week and lodging.

2 level mitigation recommended.

October 2016 – May 2019

**Karel Felipe**

Handyman, landscaper, and carpenter.
Mailed out cost report.
Copied information onto checks.

July 2017